Judge Carr.
In June, 1818, the Commonwealth obtained a judgment against George Winston in the General Court, for $17,993 24 cts. with interest from the L9th of April, 1817. As to $5,631 80 cts. part of this judgment, Winston appealed, leaving $ 12,361 44 cts. for which there was an undisputed judgment against him. For this last sum Winsto?i obtained an act of Assembly, passed the 2d of March, 1819, allowing him five, six and seven years to pay it off by equal instalments. To secure these payments, he executed a bond, dated June 21st, 1819, with two sureties, for the sum of $24,792 88 cts. conditioned to pay $4,120 48 cts. on the 2d of March, 1824, and the same sum on the same day of the two following years, with interest on each instalment from the 19th of April, 1817. The time for the payment of the first instalment having passed, the Auditor gave Winston and his sureties notice, that a motion would be made in the General Court, on the 15th of June, 1824, for judgment against them for that instalment, with interest *547 from the 19th of April, 1817. On the hearing of the motion, the defendants not appearing, judgment was rendered for the penalty of the bond, to be discharged by the payment of $ 4,120 48 cts. with interest from the second of March, 1824, and such other sums as should afterwards appear due, on scire facias being sued out. A notice was given by the Auditor to the defendants, that a motion would be made to the succeeding General Court, to amend this judgment; it being erroneously entered, in this; that it is made to carry interest from the second of March, 1824, instead of the 19 th of April, 1817, as called for by the bond.
The General Court overruled the motion to amend the judgment. The Attorney General, for the Commonwealth, excepted to the opinion, spreading the facts upon the record, and took an appeal.
We are to consider, whether in this judgment the General Court erred.
At the common law, an error committed by the Court, not in a point of judgment, but such as might be called a misprision of the Court, could be amended; but, no misprision of the clerk was amendable after the term. 8 Co. 157, Blackmore’s Case. By the 14th Edw. 3, chap. 6, (which was the first act of amendment) it is enacted, that by the misprision of clerks in every place wheresoever it be, no process shall be annulled or discontinued, by mistaking in writing one letter or one syllable too much or too little, &c. but shall be hastily amended in due form. Upon this statute, many doubts seem to have arisen; among others, whether a word might be amended; as the statute speaks only of a mistake in writing a letter or syllable too much or too little; and it was determined, that under the statute, words, as well as letters and syllables, might be amended.
The most important English statute on this subject, is 8th Hen. 6, ch,ap. 12, by which Judges had power to examine records, and in affirmance of judgments, to amend *548 all that to them, in their discretion, should seem to be the misprision of the clerk.
In 1753, 6 Stat, at Large, 339, it was enacted, that all the English acts oijeofail and amendment, shall be in full force ¡n this Dominion also. Under the statute of 8th Hen. 6, many decisions have taken place in England, drawing the line of distinction between misprisions of the clerk, and errors in judgment. See Petrie v. Hannay, 3 Term Rep 659; Manners, qui tam v. Parten, 3 Bos. & Pull. 343; Newcomb v. Green, 1 Wils. 33; 2 Vin. Abr. 346, pl. 11; 372, pl. 11; 373, pl. 16; 374, pl. 20; Dunbar v. Hancock, 3 M. & Selw. 591; Short v. Coffin, 5 Burr. 2730. In this last case, the suit was against A. as executor, and a general verdict; but the judgment entered de bonis propriis. After a writ of error had been brought in the Exchequer, and in nidio est erratum pleaded, it was moved in the King’s Bench to amend; and the Court were all clearly of opinion to amend the judgment, by making it de bonis testatoris si, &c. It was objected, that this was a mistake in law, and cases cited to shew that it could not be amended. But, Lord Manseiexd delivered the opinion of the Court, “That this is not an error in the judgment of the Court in point of law, but a mere mistake of the clerk;” and he repeated at large the case of Chapman v. Gale, from 2d Lev. 22, which was debt against an executor, who pleaded fully administered, and verdict and judgment for the plaintiff, which was entered generally; and thereupon error was brought, and it was assigned, that the judgment should have been de bonis testatoris si, &c. But, upon the affidavit of the attorney, that he gave the clerk instructions to enter it up according to the plea, and that it was a mere mistake of the clerk, “ it was amended as a misprision of the clerk.”
If the case at bar were to be decided under the English statutes, there could be no doubt that the case just cited would be considered a full and clear authority; indeed, a stronger case than ours. There, the whole effect of the *549 judgment was changed by the amendment. Still, as the record shewed that the suit was against the defendant as executor, and the verdict in the same character, and the attorney swore that his instructions were to enter the judgmenl according to the plea, it was apparent, that the mistake was the clerk’s, and as such, it was amendable.
In the case before us, it was contended, that the doctrine of amendments did not apply, because this was a motion, and not an action. But I can see no ground for the distinction. The questions in such cases always are, whether the mistake is clerical, and whether there is any thing in the record, by which the error can be safely corrected; and if these be answered affirmatively, whether it be a suit or a motion, the reason and the law are the same. In our ease, there was a bond for the money, with interest from tho 19th of April, 1817. The notiee informed the defendants, that a motion would be made for judgment on the bond, with interest from this date. The defendants made no defence; thereby admitting the justice of the claim. The judgment is entered for the penalty; but, when the clerk came to state the sum by which it might be discharged, he sets it down as #4,120 48, with interest from the 2d day of March, 1824, instead of Jrom the 19th of *April, 1817; and evidence was offered to the Court (and improperly rejected by them, I think) to prove by the oath of tho Auditor and the clerk, that instructions were given to enter the judgment agreeably to the condition of the bond, with interest on the instalment from the 19th of April, 1817, and that the entry actually made, was so made through the inadvertency and mistake of tho clerk. These facts leave no rational ground for doubt. They shew the mistake to have been clerical; and they give the safe ant! sure guides, by which to correct tho misprision.
But, it is said, that the English statutes were not in force here, when this case arose; and that is very true. I consider, however, that by the statute of 1753, they were incorporated into our laws, as much as if they had been *550 repeated verbatim; and that they were not repealed by the subsequent declaration, that British statutes (as such) should no longer be in force here; but that they were repealed by the clause in the revisal of 1819, declaring that ap ]awgj not included in that revisal, should be repealed. It was by no means, however, the intention of the enlightened board of revisors, to take away, or to curtail, the salutary power of amendment, so long exercised by the Courts. Accordingly, they inserted in the revisal a clause to the following effect: “ Where, in the record of any judgment or decree of any Superior Court of Law or Equity, there shall be any mistake, miscalculation, or misrecital, of any sum or sums of money, tobacco, wheat or other such thing, or of any name or names, and there shall be among the record of the proceedings, in the suit in which such judgment or decree shall be rendered, any vex1dict, bond, bill, note, or other writing of the like nature or kind, whereby such judgment or deei'ee may be safely amended; it shall be the duty of the Court in which such judgment shall be rendered, and of the Judge thereof in vacation, to amend such judgment or decree thereby, according to the very truth and justice of the case; the opposite party having notice, &xc.” 1 Rev. Code, 512, sec. 108. This is the law by which we must decide this case.
It is objected, first, that the General Court is not within the words of the law. Secondly, That the misprision is not one of those declared amendable by the law.
With respect to the first, the statute itself declai’es, that for I’emoving all doubts concerning the Courts to which this act may apply, all things herein contained, not x-estricted by their nature, or by express provision, to particular Courts, shall be the rules of decision and proceeding in all Courts whatsoever within this Commonwealth. We must enquire, then, whether the clause concerning amendments, either by its nature or its expi'ess words, be so restricted as not to embrace the General Court.
*551 It was not, and it could not be contended, that there was any thing in the nature of the power of amendment, which rendered it inapplicable to the General Court. On the contrary, if there be one Judicial tribunal, to which this power is more necessary than another, I should think the General Court would be that very tribunal. I must be understood to say this, not in reference to the members of that Court, (for whom I have the highest respect,) but to its constitution, the nature of the business before it, the dispersed situation of the Judges, and the shortness of the sessions, &e. It was strongly contended, however, that by the express words of the law, the General Court was excluded; “any Superior Court of Law or Equity.” Our laws divide the Courts into two classes, as to grade, Superior and Inferior. To one or other of these classes, every Court in the Commonwealth must belong. The County and Corporation Courts are called in various acts, the Inferior Courts, and all above them, the Superior Courts. That the General Court is above them, no one will deny. Thus, in the general classification, the General Court, so far from being excluded, is expressly included by the terms, “any Superior Court of Law.” But, there are many particular laws, which, in their provisions, most clearly take in the General Court, by the terms Superior Courts. Thus, the act concerning counsel or attornies, passed in 1792, long before the existence of the Circuit Court system, enacts that before any person shall be licensed to practice law, he shall produce to those authorised to examine, &c. a certificate, &c. and three of the Judges of the Superior Courts, upon, &c., may grant to such person a license to practice law, in the Superior and Inferior Courts of this Commonwealth. Again, “ Counsel who prosecute in an Inferior Court, shall not be permitted to appear in a Superior Court,” &c. Again. “If any suit shall be dismissed for non-attendance of an attorney practising either in the Superior or Inferior Courts,” Now, surely, it will not be for a moment doubted, *552 that in all these eases (and many others might no doubt be cited,) the General Court and its Judges are comprehended in the terms Superior Courts of Law. We see, then, that both by the nature of the power, and the words of the grant} t¡le General Court so far from being excluded, is directly included. Nor does it render this construction at all doubtful, that in another part of the clause, the power is given to the “ Court in session or the Judge thereof in Vacation.” Reddendo singula singulis, all appearance of obscurity or absurdity is avoided. The General Court, the Circuit Courts, and the Chancery Courts, may amend; and every Judge who has a particular Court or Courts, may, for errors in his Courts, amend in vacation.
But, secondly, it is contended, that the misprision here, though clearly (as has been shewn) clerical, is not within the law, because it is neither a “mistake, miscalculation, or misrecital, of any sum or sums of money, tobacco, wheat, or other such thing, or of any name or names.”
We must recollect, 1st, that this is a law of jeofails and amendment, and therefore to be liberally construed. 2d. That whereas, under the English statutes of amendment, misprisions of the clerk only could be amended; under ours, mistakes of the Court also, in every thing except matters of judgment may be amended; which is strong to shew, that the law did not mean to curtail the power, which had so long existed. For, it would be most strange to suppose, that the Legislature, while extending the power to mistakes of the Court, could mean to withdraw from it any mistake of the clerk. The clear meaning of the law, then, in my judgment, is, that any misprision of the clerk, (or mistake of the Court, not touching a' matter of judgment,) may be amended, provided the record furnishes the means, whether bond, bill, note or other thing, by which the amendment may be safely made; and the terms mistake, miscalculation or misrecital, &c., are put rather for example, and as comprehending those misprisions which commonly happen, than as restrictions on the power of *553 the Court. If the clerk, in this case, had mistaken the name of a party, or the sum, there could be no question of the power of the Court to amend. Has he not, in effect, » , and m reason, mistaken the sum ? By the bond and the notice, the judgment should have been for the instalment of 04,120 48, and 01,000 (within a trifle) for interest prior to the date of the bond. By the error of the clerk, this 0 1,000 is omitted. Is not this a mistake, and a capital mistake too, in the sum ? To say that such misprision, is not within the meaning of the law, is to stick in. the letter, to disappoint the intention of the Legislature, and to construe this statute as strictly as if it was a capital offence, instead of a misprision of the clerk, which was the subject.
I am of opinion, that the judgment of the General Court be reversed, and such judgment, entered as they should have entered.
Judge Gkeek.
Amendments after the term were allowed in very few eases at the common law. In a few cases, however, they were permitted, as in case of a mistake in the recital of a writ, the entry of an essoign, or of a continuance; all of which were palpable mistakes, amendable by other parts of the record susceptible of no doubt. These were allowed to be amended, because they were considered to be the misprisions of the Court. Blackamore’s Case, 8 Co. 156, b. Such an amendment as is proposed in this case, whether it was considered as a misprision of the Court or of the clerk, couldnot, afterthetermat which the judgmentwas rendered, be amended at common law. Before the statutes of amendment, no misprision of a clerk could be amended; and those statutes applied only to the eases of clerical misprisions. The first of those was that of the 14th of Edw. 3, ch. 6; and the most important, that of 8th Hen. 6, ch. 12. It was under the authority of these statutes, and not by force, *554 of the principles of the common law, that amendments were made in the cases cited by the Attorney General, although the statutes are not directly referred to.
Jn 1753, 6 Hen. Stat. at Large, 339, the Legisla» ture 0f Virginia adopted in mass all the statutes of jeofails and amendments in force in England; of which, those in force in England before the 4th of James 1, were, before the passing of this act of Assembly, in force here; and all those statutes applied to the proceedings in all our Courts of record. ■ These statutes of England, so adopted by our act of 1753, although not re-enacted in form by the General Assembly, continued in force here, until the 1st of January, 1820. The act of 1792, declaring that no act of Parliament should have any force here, was only intended to abrogate the acts of Parliament passed before the 4th of James 1; which were, until abrogated by the act of 1792, always in force here, as declared by the resolution of the Convention of 1776. But, the act of 1792 did not abrogate the statutes which had been adopted and virtually incorporated into our code of laws, by an act of Assembly. These statutes of amendment, however, ceased to operate here on the 1st of January, 1820, when the laws enacted at the last revisal took effect, by one of which, all laws, not published in that Code, were repealed; and consequently the act of 1753, was thereby repealed. The only statute of amendment, therefore, now in force here, is that of 1819, ch. 128; the 108th section of which contains the only provision which can apply to the case at bar. That provides, “When in the record of any judgment or decree of any Supe.rior Court of Law or Equity, there shall be any mistake, miscalculation, or misrecital of any sum or sums of money, tobacco, wheat, or any other such thing, or of any name or names, and there shall be among the record or proceedings in the suit in which such judgment or decree shall be rendered, any verdict, bond, bill, note, or other writing of the like nature or kind, whereby such judgment or decree may be safely amended, it shall be the *555 duty of the Court in which such judgment shall be rendered, and of tiie Judge thereof in vacation, to amend such judgment or decree thereby, according to the very truth and justice of the case; provided the opposite party have notice,” &c.
The statute does not, (as did the former laws) coniine the power to amend, to mistakes, &e. made by the clerk only; but, extends to those also made by the Court, if they be not errors in the judgment of the Court, but only in the sum, name or quantity, which indeed would he properly clerical mistakes, in the Court reducing its judgments to writing. The questions, in this case, are, whether this statute extends to judgments of the General Court; and if it does, whether the mistake in question is such as can be amended under the statute.
The terms “ Superior Court of Law or Equity,” seem to me to embrace, in their natural import, all the Courts, except the County and Corporation Courts, and were probably used as the most comprehensive expression to distinguish these Superior from those Inferior Courts. The provision that it shall be the duty of the Court, and of the Judge thereof in vacation, to amend, does not necessarily contradict this construction; for, taken distributively, it applies to all the Superior Courts when in session, and to the Judge thereof in vacation, whore the Court consists of one Judge. In the latter case, the amendment may be made as conveniently and as safely in vacation, as in term time; but not in the former. I am the more induced to adopt this construction of the statute, by the consideration, that when it was enacted, the former laws authorising such amendments, then in force and applicable to all Courts, were repealed, and the effect of many statutes condensed into this one, only a little enlarged in some respects, and restrained in others. I cannot think it was intended to take from the Courts, consisting of many Judges, a power which they before had; and to refuse to the General Court in term, a power to amend their judgment- *556 confided to a single Judge of that Court in vacation, in respect to a judgment in a Superior Court of Law fpr a ,COUnty.
j nQj think that the admission of the Attorney Genera] Up0n the record, that the judgment was satisfied, can receive the construction contended for by the appellee, and be a bar to the motion to amend. Jt was an acknowledgment, that all. which could be claimed under that judgment as it was, had been paid; but whether voluntarily or coercively, does not appear. If a coercive payment would bar any further remedy upon the judgment, the fact should have been alleged and proved by the appellee.
Under the statutes in force before the 1st of January, 1820, the mistake made in this judgment, being a misprision of the clerk, might have been amended, 8th Hen. 6, ch. 12, sec. 2; and although the entry of the judgment was signed by the presiding- Judge, it would have been considered as a clerical mistake. The statute of Hen. 6th, above cited, authorises the Courts “to amend, in affirmance of judgments, all that in their discretion seemeth to be misprision of the clerks.” Under this act, a judgment entered on the records of our old District Courts, and signed by the presiding Judge, was amended by the Court at a subsequent term, and the amendment sanctioned by the Court of Appeals. Gordon v. Frazer, 2 Wash. 130. This could only have been properly done, on the ground that it was a misprision of the clerk; and the paper by which the judgment was amended, was the bond on which the suit was brought, and the endorsements thereon, which were considered as a part of the bond, and the credits also endorsed upon the bond. The construction given by the English Courts to the statutes of amendment, required that there should be something to amend by; and if there were, then a judgment, as well as any other part of the record, might be amended. Tidd’s Prac. 246-247; cases cited in 2 Vin. Abr. 309, F.
*557 Some of the subsequent eases in this Court seem to have shaken the authority of the case in Washington; the first of which was that of Vaughan § Field v. Freeland, in a note, 2 Hen. & Munf. 477; in which the judgment was reversed, because it had been amended after the term. The verdict was erroneously entered on the record hook signed by the Judge; and this error was corrected by amending the entry, so as to conform to the real finding of the jury. In this case, there was a paper, not only in the record, but an indispensable part of the record, by which a palpable error of the clerk might be corrected, as by the bond in Gordon v. Frazer; and I cannot but think, that the case of Gordon v. Frazer is the best authority; especially, as Judge Tucker, in Cogbill v. Cogbill, expressed his dissatisfaction with the case of Vaughan § Field v. Freeland.
The eases of Halley, &c. v. Baird, &c. 1 Hen. & Munf. 25, and Cogbill v. Cogbill, 2 Hen. & Munf. 478, do not conflict with Gordon v. Frazer. In the first, the District Court set aside in loto an office judgment, which stood confirmed, and was final at a preceding term; and reinstated the suit, and sent it to the rules for new proceedings. This was not an amendment, but an annihilation of the judgment. In Cogbill y. Cogbill, the Court refused to allow an amendment, by correcting the order in the record by the minutes of the clerk, a material part of the minute being omitted in the order. But it is observable, that one of the three Judges who sat in that case, dissented, and that the minutes of the clerk are not a part of the record as a bond is, at least to some purposes, and especially to amend by. I conclude, that the mistake in the entry of the judgment, sought to be amended in this case, was not an error in the judgment of the Court, but a clerical mistake in recording the judgment of the Court; and at all events, it was competent to the Court, in which the judgment was rendered, to decide upon motion, whether it was an error in the *558 judgment of the Court, or a mistake in the entering of the judgment.
It only remains to enquire, whether this mistake, if it was clerical, could be amended by entering the judgment now, ag ought to have been originally entered, according to the condition of the bond. I have already observed, that no amendment can be made but by virtue of the statute of 1819, and in such cases as were allowed by the common law, of which this is not one. The question is, whether a mistake as to the date at which interest shall commence, is amendable under this statute.
Upon a strictly literal construction of the terms of the 108th section, compared with the 103d section, which prescribes the effect of a verdict in curing errors in the previous proceedings, it might be very well doubted, whether it authorised the amendment of a mistake “ in the day, month or year';” especially if the difference in the phraseology of the two sections could be considered as designed by the Legislature. The 103d section provides for a mistake in the declaration or pleading of “the day, month or year,” as well as of “the Christian name or surname of either party, sum of money, or quantity of merchandize, (the name, sum, time, or quantity, being right in any part of the proceedings or record;”) and the 108th section provides only for the “mistake, miscalculation or misrecital, of any sum or sums of money, tobacco,- wheat, or any such thing, or of any name or names;” omitting the case of a mistake in “ the day, month or year,” provided for in the 103d section. I can, however, see no possible reason to induce the Legislature to make a distinction, in this respect, between the effect of a verdict, in amending an error in the previous proceedings as to time,- and the amending of such a mistake in a judgment. The law requiring in both cases some authentic document in the record to amend by, I consider both sections to have intended to produce the same effect; the one, upon the proceedings before the verdict; the other, upon the judgment, by remedying “cleri *559 cal misprisions,” whether committed by the clerk, the parties, or the Court, where there was any thing in the record, by which it could be safely corrected. The differenee in the phraseology7 is accounted for by the fact, that the two sections were drafted at different times, and by different bauds." the 108t.h being a new provision recommended by the revisors, and which was necessary to obviate the effect, of the repeal of the former statutes of amendment, and of the decision in Vaughan fy Field v. Freeland. The statutes of amendment and jeofails have always received a liberal construction; and when the judgment is for a sum of money, with interest thereon from a time past, and there is a mistake in stating the time when interest shall commence, it may be fairly considered as a mistake in the sum of money adjudged; the interest being a constituent part of the debt recovered, as much as the principal.
I think the Court ought to have amended the judgment;, according to the terms of the bond.
Judge Cabeix.
On the 21st of June, 1819, George, Winston, James Winston and Pleasant Winston, executed their bond to James P. Preston, Governor of the Commonwealth, in the penal sum of @24.722 88, with condition to be void if the said George Winston should pay the following sums of money, at the following periods, viz: @4,120 48, on or before the 2d day of March, 1824, with interest thereon from the 19th day of April, 1817, till paid; @4,120 48, on or before the 3d day of March, 1825, with interest thereon from the said 19th day of April, 1817, till paid; and the sum of @4,120 48, on or before the 2d day of March, 1826, with interest thereon from the said 5 9th day of April, 1817.
The period for the payment of the first instalment having passed, the Auditor gave the Winstons notice, that a *560 motion would be made against them- in the General Court, on the 15th of June, 1824, for a judgment on the said bond, because of the breach of the condition'thereof, in this, that the said George Winston had'not paid the first instalment, $ 4,120 48, with interest thereon from the 19th of April, 181-7.
The Winstons neither appeared, nor made any defence against the said motion; whereupon, a judgment was entered against them on the 16th of June, 1824, for the-penalty of the bond, to be discharged by the payment of $ 4,120 48, with interest thereon from the Zd of March, 1824, till paid,- and the costs; and' such other sum or sums of money as should thereafter appear to be due, upon suing out a scire facias, and assigning new breaches.
At the succeeding General Court, viz: on the 20th of November, 1824, and in pursuance of notice given to the Winstons, the Auditor of Public Accounts, on behalf of the Commonwealth, made a motion to the General Court, to amend the judgment aforesaid, because it had been erroneously entered, in this, that it was made to carry interest from the 2d day of March, 1824, instead of the 19th of April, 1817.
On the trial of the motion, it was admitted that the judgment sought to be amended, had been, previously to the notice and motion, fully satisfied as to the whole amount in the said judgment specified. The Attorney General then offered to prove by the Auditor of Public Accounts, and the clerk of the General Court, that the said clerk had received no directions, either from the General Court, the Auditor, or the Attorney General, to enter the judgment in any,manner variant from the condition of the bond; but that his instructions were, to enter the same agreeably to the said condition, with interest on the instalment for which the said judgment was rendered, from the 19th of April, 1817; and that the entry of the said judgment, with interest from the 2d day of March, 1824, was made by the said clerk, through inadvertence and mistake. But, the Court *561 refused to receive the evidence of the Auditor and of the clerk to that effect; and overruled the motion for the amendment.
The correctness of that decision is now to be considered. At the common law, as well the judgment of the Court, as any other part of the record, may be amended, during the same term in which the entry was made; for, during the term, the record is in the breast of the Judges, and not in the roll. Co. Litt. 260; 5 Co. 74, b.; 8 Co. 156, b. But, at the common law, amendments were rarely admitted after the term. They were confined to those cases, where the act complained of could be considered the “ misprision of the Court itself, in the form of the entry,” and where the mistake was amendable by other parts of the record, which admitted of no doubt; such as “a fault of entry of a continuance, or of an essoign, or misreeital of the original writ. 8 Co. 156, b. But at common law, there could be no amendment after the term, where the act complained of was the misprision of the clerk. 8 Co. 156, b. The statutes of the 14th of Edw. 3d, ch. 6, and of the 8th of Hen. 6, ch. 12, were made to remedy this evil. The last of these statutes declares, that the Courts shall have power to reform and amend, in affirmance of judgments, “ail that to them, in their discretion, seemeth to be the misprision of the clerks.” 8 Co. 157. These statutes were always in force in this country; but, they were, moreover, together with all the other British statutes, “commonly called statutes of Jeofails,” adopted by our Legislature, in the year 1753, (6 Hen. Stat. at Large, 339,) “ for so much thereof as relates to any mispleading, Jeofail, and amendment;” and they applied to the proceedings of all our Courts of record. They were not affected by the act of 1792, (13 Hen. Stat. at Large, 234,) declaring that no British statutes should have any force or authority in this Commonwealth. For, that act was manifestly intended to apply to such British statutes, as had been referred to by the ordinance of the Convention of 1776, (9 Hen. Stat. *562 at Large, 127,) which were such as had always been in force here, and not to such as had, by previous acts of our Legislature, been expressly adopted, and, as it were, inc0rp0rate(j jnt0 our Code of Statute Law. But they were repealed by the act of 1819, (1 Rev. Code, 16,) because they were not included in the late publication of the laws.
It was not, however) the intention of the Legislature, to leave us exposed to the inconveniences of the limited powers of amendment given by the common law. In repealing the British statutes of amendment, they adopted a provision more extensive than any in the British statutes. • That provision is to be found in the 108th section of the 128th chapter of the act of 1819, (1 Rev. Code, 512;) and it declares, that “where in the record of atiy judgment or decree of any Superior Court of Law or Equity, there shall be any mistake, miscalculation, or misrecital of any sum or sums of money, tobacco, wheat or other such thing, or of any name or names, and there shall be among the record of the proceedings in which such judgment or decree shall be rendered, any verdict, bond, bill, note, or other writing of the like nature or kind, whereby such judgment or decree may be safely amended, it shall be the duty of the Court in which such judgment shall be rendered, and the Judge thereof in vacation, to amend, such judgment or decree thereby, according to the very truth and justice of the case, provided the opposite party, &c. shall have reasonable notice, &c.”
The British statutes of amendment extended only to misprisions of the clerks; whereas our new statute extends to those of the Court also; not indeed, to errors in the judgment of the Court, in point of law, but to mistakes of the Court, in the sum,-name or quantity; which may be regarded as clerical misprisions of the Court, in reducing its judgment to writing.
But, before we proceed to consider the correct construction of the act of 1819, concerning amendments, which do not take effect till January, 1820, it will be useful to con- *563 aider the nature of the error complained of in this case, and the power of amending it, under the laws that were in force here, prior to the 1st January, 1820.
The motion on which the original judgment was rendered, was a summary proceeding, in which the Court were authorised to give a judgment, without the formality of pleadings in writing. No declaration was required from the plaintiff, nor any bail, nor plea from the defendants. The plaintiff was entitled to a judgment according to the proofs adduced. The notice informed the defendants, that the plaintiff demanded the first instalment, with interest thereon from the 19th of Jlpril, 1817. The bond itself expressly bound them to pay interest from that time, and was, of itself, sufficient evidence to authorise and require a judgment for interest thereon, from that time, unless controlled by countervailing testimony. The record states, that on the trial of the motion, the defendants “'were called, but came not;” an entry which, in a summary proceeding like this, necessarily implies that they did not appear either in person or by attorney, and that they introduced no testimony whatever. There was, then, nothing for the Court to do, but to render judgment according to the evidence of the plaintiff, viz: according to the bond, for the first instalment, with interest from the 19th of April, 1817. We know, however, that on such occasions, the Court enters into no detail in pronouncing its judgment. All that is then done, is to direct a judgment according to the bond; leaving it to the clerk to extend it, in proper form, upon the order book.
If we attend to the power of amendment as exercised by the Courts of Westminster Hall, under the very laws that were in force in this country until the 1st of January, 1820, it is incontrovertible that such a mistake as that complained of in this case, would be there considered as a misprision of the clerk; and that although the entry of the judgment should be signed by the presiding Judge of the Court, it would, nevertheless, be regarded and amended as a misprision of the clerk.
*564 The case of Chapman v. Gale, 2 Lev. 22, was debt against an executor, who pleaded plene adminislravit; verdict and judgment for the plaintiff, which was entered generally; and thereupon error was brought, and it was assjgnecj) ««that the judgment should have been de bonis testatoris si,” &c. But upon the affidavit of the attorney, <« that he gave the clerk instructions to enter it up according to the plea, and that it was a mere mistake of the clerk,” it was amended as a misprision of the clerk.
The case of Short v. Coffin, 5 Burr. 2730, is to the same effect. That was the case of a motion to amend a judgment against an executor de bonis propriis, by making it de bonis testatoris si, &c., et de bonis propriis, si non, &c. It was after writ of error brought, in nullo est erratum pleaded, and an argument in the Exchequer Chamber. It was contended by the counsel opposed to the amendment, that it was not a mistake of the clerk, but a mistake in law; and that the amendment would alter essentially the judgment. But Lord Mansfield delivered it as the opinion of the Court, “ that it was not an error in the judgment of the Court, but a mere mistake in the clerk;” and it was amended accordingly.
The first of these cases, Chapman v. Gale, shews also, that according to the practice in England, the General Court ought to have admitted the testimony as to the instructions given to the clerk, which would have proved clearly that the mistake was nothing more than the misprision of the clerk; and both cases shew, that in England, it would have been amended.
I am of opinion, that the most approved decisions of this Court are in conformity with the decisions of the English Courts. A judgment entered on the order book of one of the old District Courts, and signed by the presiding Judge, was amended by the same Court, at a subsequent term; and the power to amend was, on appeal, sanctioned by this Court, (Gordon v. Frazer, 2 Wash. 130,) on the ground that it was a misprision of the clerk, and that there was *565 something to amend by, viz: the bond on which the suit was brought, and the memorandum and credits endorsed thereon.
The case of Gordon v. Frazer, has never been expressly overruled; but, its authority is somewhat shaken by some subsequent cases, which seem to have been decided on principles inconsistent with it. The first of these is the case of Vaughan & Field v. Freeland, note to Cogbill v. Cogbill, 2 Hen. & Munf. 477. In that case, the clerk entered the verdict of the jury erroneously on the order book, and entered the judgment conformably to the erroneous entry of the verdict; and these entries were signed by the Judge. At a subsequent term, the same Court permitted the entries to be amended, so as to conform to the real finding of the jury. On appeal to this Court, the judgment was reversed on this ground, “ that the order made for amending the record and altering the judgment entered on the said verdict, at another and a subsequent term, after verdict given and judgment thereon, fully drawn up, read and signed by the Judge in open Court, was erroneous; the said amendment, after the term, not being authorised by law.”
In the case of Halley v. Baird, 1 Hen. & Munf. 25, which followed very shortly after, the same principle is declared, viz: “ that the District Court had no power or jurisdiction to reverse, alter or amend the judgment given at a former term of the said Court, which had been entered on the order book, and signed by the Judge in open Court.”
This last case was, no doubt, founded on the authority of Vaughan 41 Field v. Freeland; for, it is resorted to in the argument, and its phraseology expressly adopted by the Court. Both cases, so far as relates to the avowed principles of the decision, are in direct conflict with Gordon v. Frazer; for, in Gordon v. Frazer, the judgment had been “fully drawn up, read,and signed by the Judge in open Court.”
*566 I do not think the case of Cogbill v. Cogbill, 2 Hen. & Munf. 467, can be considered as conflicting with Gordon v. Frazer. In Cogbill v. Cogbill, the question was, whetjie entrjes jn the order book, signed by the Judge, ghoujfj be amended by the minutes of the clerk, as to a material fact noted in the minutes, but omitted to be carried into the order book by the clerk. This was a very different question from that which arose in Gordon v. Fraser. In Gordon v. Frazer, there was a bond, (which, to certain purposes, is a part of the record,) according to which the entry ought to have been made, and to which reference might be had, with safety,, for correcting any mistake. But, the minutes of the clerk are no part of the record; they are generally taken hastily, and often inaccurately, and cannot, of themselves, be safely relied on for correcting errors in the order book, like a verdict, a bond, bill or note. The decision in Cogbill v. Cogbill may be, and I am inclined to think, is correct; but it does not weaken the authority of Gordon v. Frazer.
I feel myself at liberty to choose between the conflicting decisions of Gordon v. Frazer, on the one hand, and of Vaughan £? Field v. Freeland, and Halley v. Baird, on the other; and I am constrained, by the best consideration I can give the subject, to .prefer the authority of Gordon v. Frazer. Every body knows, that although the proceedings of the Superior Courts, after having been extended and entered on the order books, are read over in Court, and signed by the presiding Judge, yet, when these entries are founded on a verdict, bond, bill or note, or any such writing, there is a confidence that the clerk has extended them conformably thereto; which, almost always, prevents any enquiry into their correctness. In such cases, the mistake, if there be one, is, in its origin, that of the clerk; and it continues to be so, notwithstanding the reading and signing by the Judge. For, no comparison is made by the Court, between the entries as made by the clerk, and the papers on which they are founded. The *567 judgment of the Court is not exercised on the subject. I feel less hesitation in rejecting the authority of the cases opposed to Gordon v. Frazer, because Judge Tucker, who sat in one of them, appeared, in Cogbill v, Cogbill, 2 Hen. & Munf. 478, not to be satisfied with Vaughan 8f Field v. Freeland; and I reject them the more readily, because this Court, in the late cases of Wren v. Thompson & Veitch, 4 Munf. 377, and Bent v. Patten, 1 Rand. 25, adverted to the case of Gordon v. Frazer, in a manner indicating no disapprobation.
The principle which I extract from the British decisions, and from Gordon v. Frazer, is, that that which, in its origin, was a mere misprision of the clerk, does not cease to be so, merely because the entry has been read in Court, and signed by the Judge; and that it will be amended as the misprision of the clerk, provided there is any thing in the record, by which it may be safely amended.
I come, therefore, to the conclusion, that if this case were to be decided by the laws in force, prior to the 1st of January, 1820, the mistake complained of would not be considered as an error in the judgment of the Court, but as the mistake of the clerk in entering the judgment of the Court; and that it would be amended as a clerical misprision, there being a bond in the record, by which the amendment might be safely made.
It remains, now, to consider the case under the act of 1819, which took effect on the 1st of January, 1820.
It is objected, that that act does not apply to the proceedings in the General Court.
The 111th section of the act, for the purpose of removing all doubts concerning the Courts to which the act may apply, declares, “that all things herein contained, not restricted by their nature, or by express provision, to particular Courts, shall bo the rule of decision and proceeding in all Courts whatsoever, within this Commonwealth.”
It will not be pretended, that there is any thing in the nature of the power of amendment, or in the nature and *568 constitution of the General Court, which should restrict the salutary power of rectifying inadvertent mistakes, miscalculations, and misrecitals, to other Courts, in exclusion of the General Court.
Is there any thing in the “express provision” of the law, which operates such exclusion ?
The section giving the power of amendment, applies, in terms to every Superior Court of Law and Equity.
All our Courts are classed, as to grade, into Superior and Inferior. This classification is recognized by various acts of Assembly, to which it surely cannot be necessary to refer. In reference to this distinction, it never has been, and I presume never will be, denied, that the General Court is a Superior Court of .Law.
But, those Courts which are held in each county, by .a Judge of the General Court, are also Superior Courts of Law, in reference to the Courts of Law held by the justices of the County Courts; which last are expressly designated by our laws, as Inferior Courts.
The question, then, as to this point, resolves itself into this: Did the Legislature, in using the terms “any Superior Court of Law,” mean to confine them to the Superior Courts of Law for the several counties, or did they mean to extend them to all the Superior Courts of Law known to our system ?
The terms “any Superior Court of Law” are, unquestionably, broad enough to embrace all Superior Courts of Law; and the .reason of the law clearly applies to all. Unless, therefore, vve have some evidence of the intention of the Legislature to exclude a particular Superior Court, the law must apply to all.
It wascontended in the argument, that such evidence is to be found in that part of the act, which declares that the power of amendment shall be exercised by the Court, and “ the Judge thereof in vacation.” But I think we should construe that part of the act distributively, so as to apply it to all the Superior Courts when in session, and to the *569 Judge, in vacation, of such Superior Courts as consist of one Judge only. We must necessarily adopt this construction, or the General Court, when in session, will be deprived of a power, which has for ages been deemed essential to the due administration of justice, and which that Court (as to clerical misprisions) always had before the passage of this law. When, in altering the former law, the power of amendment was enlarged as to all the other Superior Courts, it cannot be believed that it was intended to be taken away, altogether, from the General Court, to which it was as necessary as to any other.
The act, therefore, applies to the General Court.
It is also objected, that the mistake in this case, even if it be a clerical misprision, is not amendable under the act of 1819, which speaks of mistakes, miscalculations and misrecitals of sums and names, but is silent as to mistakes, &c. of a day, month or year. But, the act of 1819, is a statute of jeofail and amendment, and is, therefore, to be construed liberally. A mistake of a day, month or year, is of the same character with those enumerated in the act; and it is impossible to conceive a reason for amending the latter, which is not equally applicable to the former. Besides, the power of amendment is certainly enlarged as to those subjects which are embraced by the law; for, the mistakes, &c. of sums and names, are to be amended, whether they be the act of the clerk or of the Court. We cannot, therefore, suppose, that the Legislature intended to leave mistakes, &c. of other things of the same kind, unprovided for altogether. The subjects of mistakes, &c. enumerated in the act, were given as an example; and the act, by a just construction, must be extended to all other subjects of the same character. I am, therefore, of opinion, that the mistake in this case was not only a clerical misprision, but is amendable under the act of 1819.
The right to amend is not impaired, I think, by the admission on the record, that the judgment sought to be amended, had been, previously to the notice and motion. *570 “ fully satisfied as to the whole amount in the said judgment specified.” The fair construction of that admission is, that the whole amount had been paid, which the judgment, as it then stood, authorised the Commonwealth to deviz. the first instalment, with interest thereon from the 2d day of March, 1824. It did not admit that to be paid, the demand of which was not authorised by the judgment. Whether the payment made was voluntary or coercive, does not appear. It cannot be pretended, that the voluntary payment of that which the judgment bound the party to pay, precluded the right to amend the judgment as to that which the judgment ought, to have bound, but did not bind, the party to pay. If a coercive payment would have had that effect, the fact of such coercive payment, ought to have been alleged and proved.
Upon the whole, I am of opinion, that the judgment of the General Court is erroneous, and should be reversed, with costs; and that this Court, pronouncing such judgment as the General Court ought to have rendered, should amend the first judgment, so as to make the $4,120 48, therein mentioned, bear interest from the 19th of April, 1817, till paid.
Judgment reversed.*

 The President and Judge Coalter absent.